**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| 45COMMITTEE, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 22-502 (ABJ) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| Defendant. | ) | |
| | ) | |

---

**DEFENDANT FEDERAL ELECTION COMMISSION'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Federal Election Commission ("Commission") hereby moves this Court for an

order granting summary judgment to the Commission pursuant to Federal Rule of Civil

Procedure 56 and Local Rule 7(h).  In support of this motion, the Commission is filing a

memorandum of points and authorities, a supporting declaration, a *Vaughn* index, and a proposed

order.

Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

/s/ Greg J. Mueller
Greg J. Mueller (D.C. Bar. No. 462840)
Attorney
gmueller@fec.gov

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
1050 First Street, NE
Washington, DC 20463
(202) 694-1650

June 24, 2022

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| 45COMMITTEE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 22-502 (ABJ) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |

**FEDERAL ELECTION COMMISSION'S MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

Greg J. Mueller (D.C. Bar No. 462840)
Attorney
gmueller@fec.gov

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
1050 First Street, NE
Washington, DC 20463
(202) 694-1650

June 24, 2022

## TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................................1

I.      THE FEC AND ITS ADMINISTRATIVE ENFORCEMENT
        PROCEDURES...................................................................................................1

II.     PROCEDURAL HISTORY..................................................................................5

        A.      THE FOIA REQUEST ...........................................................................5

        B.      THIS FOIA CASE ..................................................................................6

ARGUMENT ..................................................................................................................7

I.      STANDARD OF REVIEW ..................................................................................7

II.     THIS COURT SHOULD GRANT SUMMARY JUDGMENT TO
        THE FEC BECAUSE THE MATERIAL PLAINTIFF SEEKS WAS
        PERMISSIBLY WITHHELD UNDER THE DELIBERATIVE
        PROCESS PRIVILEGE.......................................................................................7

        A.      FOIA EXEMPTION 5 AND THE DELIBERATIVE
                PROCESS PRIVILEGE...........................................................................7

        B.      THE WITHHELD MATERIAL DOES NOT REFLECT A FINAL
                DECISION OF THE AGENCY ...............................................................8

        C.      THE MATERIAL WITHHELD REFLECTS THE
                GIVE-AND-TAKE OF THE AGENCY'S DELIBERATIVE PROCESS............13

        D.      IT WAS PERMISSIBLE TO FIND IT REASONABLY
                FORESEEABLE THAT RELEASE OF THE WITHHELD
                RECORDS WOULD HARM THE AGENCY'S
                DELIBERATIVE PROCESS .................................................................15

CONCLUSION.................................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buckley v. Valeo*, 424 U.S. 1 (1976) .................................................................................... 2

*Cause of Action Inst. v. U.S. Dep't of Just.*,
 999 F.3d 696 (D.C. Cir. 2021) .................................................................................. 7

*Ctr. for Investigative Reporting v. U.S. Customs and Border Prot.*,
 436 F. Supp. 3d 90 (D.C. Cir. 2019) ................................................................... 15, 16

*Changzhou Laosan Group v. U.S. Customs & Border Prot. Bureau*,
 2005 WL 913268 (D.D.C. Apr. 20, 2005).................................................................. 18

*Citizens for Resp. & Ethics in Washington v. FEC*,
 236 F. Supp. 3d 378 (D.D.C. 2017) ..................................................................... 12, 13

*Citizens for Resp. & Ethics in Washington v. FEC*,
 799 F. Supp. 2d 78 (D.D.C. 2011) ............................................................................ 13

*Citizens for Resp. & Ethics in Washington v. FEC*,
 892 F.3d 434 (D.C. Cir. 2018) .................................................................................. 13

*Citizens for Resp. & Ethics in Washington v. FEC*,
 971 F.3d 340 (D.C. Cir. 2020) .................................................................................. 13

*Citizens for Resp. & Ethics in Washington v. GSA*,
 2021 WL 1177797 (D.D.C. Mar. 29, 2021) ............................................................... 16

*Coastal States Gas Corp. v. Dep't of Energy*,
 617 F.2d 854 (D.C. Cir. 1980)........................................................................ 8, 13, 14

*Competitive Enter. Inst. v. U.S. Dep't of State*,
 486 F. Supp. 3d 171 (D.D.C. 2020)............................................................................ 7

*Conservation Force v. Jewell*, 66 F. Supp. 3d 46 (D.D.C. 2014).................................................. 9

*Dep't of Interior v. Klamath Water Users Prot. Ass'n*,
 532 U.S. 1 (2001) ..................................................................................................... 8

*Doe, 1 v. FEC*, 920 F.3d 866 (D.C. Cir. 2019)........................................................................ 13

*FEC v. Nat'l Conservative Political Action Comm.*,
 470 U.S. 480 (1985) .................................................................................................. 4

*Jordan v. FEC*, 68 F.3d 518 (D.C. Cir. 1995) ............................................................................. 13

*Judicial Watch, Inc. v. Dep't of Justice*, 20 F.4th 49 (D.C. Cir. 2021).............................. 8, 14, 16

*Judicial Watch, Inc. v. U.S. Dep't of Commerce,*
   2020 WL 6939807 (D.D.C. Nov. 25, 2020) ............................................................................ 16

*Judicial Watch, Inc. v. U.S. Dep't of Justice,*
   2019 WL 4644029 (D.D.C. Sept. 24, 2019) ........................................................................... 16

*Khatchadourian v. Defense Intel. Agency,*
   2022 WL 971206 (D.D.C. Mar. 31, 2022) .......................................................................Passim

*Machado Amadis v. U.S. Dep't of State,*
   971 F.3d 364 (D.C. Cir. 2020)................................................................................................ 17

*Moore v. Bush*, 601 F. Supp. 2d 6 (D.D.C. 2009)......................................................................... 7

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)........................................................... 14, 18

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,*
   421 U.S. 168 (1975) .................................................................................................................. 9

*Spannaus v. FEC*, 990 F.2d 643 (D.C. Cir. 1993) ..................................................................... 13

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.,*
   141 S. Ct. 777 (2021).............................................................................................. 7, 9, 10, 15

*Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007) ................................................................................ 7

**Statutes and Regulations**

5 U.S.C. § 552..............................................................................................................................1

5 U.S.C. § 552(a)(8)(A) .............................................................................................................15

5 U.S.C. § 552(a)(8)(A)(i)(I) ...................................................................................................7, 8

52 U.S.C. § 30101 .........................................................................................................................1

52 U.S.C. § 30106(b) ....................................................................................................................1

52 U.S.C. § 30106(b)(1) ...........................................................................................................1, 2

52 U.S.C. § 30106(c) .....................................................................................................................4

52 U.S.C. § 30106(e) .............................................................................................. 2

52 U.S.C. § 30107(a) .............................................................................................. 2

52 U.S.C. § 30107(a)(6) ...................................................................................... 2, 4

52 U.S.C. § 30107(a)(7) .......................................................................................... 2

52 U.S.C. § 30108 ................................................................................................... 2

52 U.S.C. § 30109 ................................................................................................... 2

52 U.S.C. § 30109(a)(1) ..................................................................................... 2, 11

52 U.S.C. § 30109(a)(2) ..................................................................................... 3, 11

52 U.S.C. § 30109(a)(3) .......................................................................................... 3

52 U.S.C. § 30109(a)(4) .......................................................................................... 4

52 U.S.C. § 30109(a)(4)(A)(i) ................................................................................. 4

52 U.S.C. § 30109(a)(6) .......................................................................................... 2

52 U.S.C. § 30109(a)(6)(A) ..................................................................................... 2

52 U.S.C. § 30109(a)(8) .......................................................................................... 4

52 U.S.C. § 30109(a)(8)(A) ..................................................................................... 4

52 U.S.C. § 30109(a)(8)(B) ................................................................................... 13

52 U.S.C. § 30109(a)(8)(C) ..................................................................................... 4

52 U.S.C. § 30109(a)(12) ..................................................................................... 2, 5

11 C.F.R. § 2.4 ........................................................................................................ 3

11 C.F.R. § 5.4(a)(4) ............................................................................................. 12

11 C.F.R. § 111.9(b) ............................................................................................. 11

11 C.F.R. § 111.16 ................................................................................................... 4

11 C.F.R. § 111.20 ................................................................................................... 2

11 C.F.R. § 111.20(a)................................................................................................ 11

11 C.F.R. § 111.21 .................................................................................................... 2

**Miscellaneous**

Fed. R. Civ. P. 56..................................................................................................... 7

Fed. R. Civ. P. 56(a) ............................................................................................... 7

Disclosure of Certain Documents in Enforcement and Other Matters,
  81 Fed. Reg. 50,702 (Aug. 2, 2016) .................................................................. 4, 13

Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the
  Enforcement Process, 72 Fed. Reg. 12,545 (Mar. 16, 2007)........................................3

The Federal Election Commission ("FEC" or "Commission") has moved for summary judgment because it has permissibly withheld, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, portions of the three documents at issue in response to the request of plaintiff 45Committee, Inc. ("45Committee"). Those portions are allowably treated as exempt under FOIA Exemption 5 because they reflect the agency's deliberative process in an enforcement matter that remains pending before the agency. Privilege was lawfully invoked in light of the agency's established administrative enforcement process, and in particular, the lack of a vote to close the file in an underlying FEC administrative matter regarding plaintiff's activities, Matter Under Review ("MUR") 7486. Contrary to plaintiff's suggestions, even though several agency votes have occurred as to MUR 7486, further proceedings remain possible. Closure of the file has for decades constituted a predicate for a matter to be considered finally resolved. And the content of the material withheld here, which conveys specific voting positions of FEC Commissioners, reflects the "give and take" of the agency's decision-making process in advance of any final resolution. The agency was permitted to conclude that premature disclosure of such records presents a reasonably foreseeable risk of harm to the agency's deliberative process. Because the records at issue may legitimately be treated as predecisional and deliberative, and premature disclosure may be determined to harm the agency's deliberative process, they were permissibly withheld under FOIA Exemption 5. The FEC's motion for summary judgment should be granted.

## BACKGROUND

## I.    THE FEC AND ITS ADMINISTRATIVE ENFORCEMENT PROCEDURES

The FEC is an independent agency of the United States government with jurisdiction over the administration, interpretation, and civil enforcement of the Federal Election Campaign Act, 52 U.S.C. §§ 30101-46 ("FECA"). *See generally* 52 U.S.C. §§ 30106(b)(1), 30107(a),

30109.  Congress provided for the Commission to "prepare written rules for the conduct of its

activities," 52 U.S.C. § 30106(e), "formulate policy" under FECA, *see, e.g.*, 52 U.S.C.

§ 30106(b)(1), and make rules and issue advisory opinions, 52 U.S.C. §§ 30107(a)(7), (8); *id.* §§

30108; 30111(a)(8); *see also Buckley v. Valeo*, 424 U.S. 1, 110-11 (1976) (per curiam).  The

Commission is also authorized to institute investigations of possible violations of FECA,

52 U.S.C. § 30109(a)(1)-(2), and to initiate civil enforcement actions in the United States district

courts, *id.* §§ 30106(b)(1), 30107(a)(6), 30107(e), 30109(a)(6).

FECA permits any person to file an administrative complaint with the Commission

alleging a violation of the statute.  52 U.S.C. § 30109(a)(1).  Absent waiver, proceedings on such

complaints are covered by confidentiality protections, 52 U.S.C. § 30109(a)(12), 11 C.F.R. §

111.21, until the Commission "terminates its proceedings," 11 C.F.R. § 111.20.  Upon receipt of

an administrative complaint, the Commission's Office of General Counsel ("OGC") is required

to notify anyone alleged to have committed such a violation, referred to as a respondent, and to

provide such persons with an opportunity to demonstrate in writing that no action should be

taken.  *Id*.  OGC then prepares a report to the Commission known as a General Counsel's Report.

The Report analyzes the allegations in the complaint, applies the relevant law to the facts

alleged, and sets forth OGC's recommendations for Commission action.  The first General

Counsel's Report in an enforcement MUR usually includes a recommendation that the

Commission take actions regarding the alleged violations, including most commonly: (1) find

reason to believe that a violation occurred and open an investigation; (2) find no reason to

believe a violation occurred; (3) dismiss the matter as an exercise of prosecutorial discretion; or

(4) dismiss the matter with a cautionary message to the respondent regarding its legal

obligations.  And FEC votes at this stage are frequently on whether to take one or more of these

courses of action.  *See* Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. 12,545 (Mar. 16, 2007).

Generally, if one or more Commissioners object to a first General Counsel's Report after it has been circulated to the Commission, or if fewer than four Commissioners vote to approve or reject the report's recommendations by the voting deadline, the Commission considers the enforcement matter at an Executive Session.  *See generally* FEC, Commission Directive No. 52 (Circulation Vote Proc.) (effective Dec. 1, 2016).  Executive Sessions are meetings that are closed to the public during which Commissioners consider pending enforcement matters and other items that must be kept confidential.  *See* 11 C.F.R. § 2.4.  During such meetings, the Commissioners may, *inter alia*, discuss OGC's recommendations and vote on potential actions like those described above, including whether there is "reason to believe" that a FECA violation has occurred.  52 U.S.C. § 30109(a)(2).

If at least four members of the Commission vote to find "reason to believe" a FECA violation has occurred, the Commission must notify the respondent of the alleged violation and its factual basis, and the agency then ordinarily investigates the allegations.  52 U.S.C. § 30109(a)(2).  On the other hand, if at least four Commissioners determine that there is "no reason to believe" a violation occurred and so it is not appropriate to proceed with an investigation, they may vote to dismiss and close the file in the matter.  FEC, Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. 12,545, 12,546.

After an investigation, OGC may recommend that the Commission find that there is "probable cause" to believe FECA has been violated.  52 U.S.C. § 30109(a)(3).  OGC must notify the respondents of its recommendation and provide them with a brief stating its position

3

on the issues. *Id.* The respondents are then entitled to file a responsive brief. *Id.* Next, OGC prepares a report to the Commission with further recommendations in light of the briefs and investigation. 11 C.F.R. § 111.16. If at least four members of the Commission vote to find probable cause to believe that a violation has occurred, the Commission must first attempt to resolve the matter by "informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement" with the respondents. 52 U.S.C. § 30109(a)(4)(A)(i). If informal methods of conciliation fail, the Commission may, "upon an affirmative vote of 4 of its members," file a *de novo* civil enforcement suit in federal district court. *Id.* § 30109(a)(6)(A). After the termination of enforcement matters, the Commission places on the public record categories of documents integral to its decision-making process, including certifications of Commission votes. FEC, Disclosure of Certain Documents in Enforcement and Other Matters, 81 Fed. Reg. 50,702, 50,703 (Aug. 2, 2016).

FECA provides that the administrative complainant may seek judicial review in this District, pursuant to 52 U.S.C. § 30109(a)(8)(A), in the event that the Commission dismisses or is alleged to have failed to act on a complaint. Defense of such cases may only be approved through an affirmative vote of four members of the Commission. 52 U.S.C. §§ 30106(c), 30107(a)(6). If a court in a review action declares that a Commission dismissal or failure to act is "contrary to law," the court can order the Commission to conform to that declaration within 30 days. *Id.* § 30109(a)(8)(C). If the Commission fails to conform to the declaration within 30 days, the complainant may obtain a private right of action against the administrative respondent for the alleged violations. *Id.*; *FEC v. Nat'l Conservative Political Action Comm.,* 470 U.S. 480, 488 (1985).

## II.    PROCEDURAL HISTORY

### A.    The FOIA Request

On November 19, 2021, the Commission received a FOIA request from 45Committee

seeking (1) "[a]ny vote certifications reflecting votes taken by the [FEC] on the Complaint

against 45Committee in MUR 7486" and "[a]ny Statements of Reasons or other Commissioner

opinions concerning the complaint against 45Committee in MUR 7486."  (*See* Declaration of

Steve N. Hajjar ("Hajjar Decl."), attached as Exh. 1, ¶ 3.)  Along with its request, 45Committee

waived the confidentiality protections provided in 52 U.S.C. §  30109(a)(12).  The

Commission's FOIA Requestor Service Center ("FOIA Service Center") acknowledged receipt

of the FOIA request on the next business day, November 22, 2021.  (*Id.*.)[1]

The Commission's FOIA Service Center responded by partially granting plaintiff's FOIA

request on January 5, 2022.  (*See* Hajjar Decl. ¶ 7).  The FOIA Service Center identified three

documents responsive to the request, as described in the attached *Vaughn* index:  a June 23, 2020

vote certification in MUR 7486; a December 2, 2021 vote certification in MUR 7486; and a

December 9, 2021 Statement of Reasons of then-Vice Chairman Allen Dickerson in MUR 7486.

(*See Vaughn* Index, attached as Exh. 2.)  The FOIA Service Center released to plaintiff a

---

[1]    45Committee seeks to use this material in another lawsuit, *Campaign Legal Center v. 45Committee, Inc.*, Civ. No. 22-1115 (D.D.C. filed Apr. 22, 2022).  45Committee, in its Complaint in this case, states that it seeks records that are "related to an administrative complaint filed against it" under FECA, and it believes there "is an effort to try to force 45Committee into civil litigation to defend against the administrative complaint's allegations without any input from the agency delegated exclusive enforcement authority over federal campaign finance law."  (Compl. ¶ 2.)  In fact, 45Committee has sought a stay in that other action based in part on the claim that this FOIA lawsuit seeks "the unredacted voting records and any statement of reasons confirming that the Commission has acted on — and dismissed — [Campaign Legal Center's ("CLC's")] administrative complaint against 45Committee, thereby precluding CLC from filing this direct lawsuit against 45Committee."  Mot. of Def. 45Committee, Inc. to Stay Proceedings, *Campaign Legal Ctr. v. 45Committee, Inc.*, Civ. No. 22-1115 (D.D.C. June 17, 2022) (Docket No. 17).

substantially redacted copy of the June 23, 2020 vote certification, revealing only a vote regarding related litigation.  (Hajjar Decl. ¶ 9.)  In addition, the Commission later approved the release of a mostly redacted copy of the December 2, 2021 vote certification that segregated for release the caption, some introductory material, and the attestation.  (*See* FEC Status Report, Docket No. 17.)  Finally, the Statement of Reasons of then-Vice Chairman Dickerson was withheld in full.  (Hajjar Decl. ¶ 7.)  The FOIA Service Center found the statement of reasons and portions of the requested certifications to be protected by the Commission's deliberative process privilege and thus withheld them pursuant to FOIA Exemption 5.  (*Id*. ¶ 8.)

45Committee administratively appealed the FOIA Service Center's determination on January 7, 2022.  (Hajjar Decl. ¶ 10.)  The appeal was designated No. 2022-02-A.  The Commission considered the appeal on February 17, 2022, and March 8, 2022.  (*Id.* ¶¶ 12-13.)  On March 8, the Commission denied the appeal.  (*Id.* ¶ 12).

**B.    This FOIA Case**

45Committee filed its Complaint in this Court on February 25, 2022.  (Docket No. 1.)  The single-count complaint alleged that the FEC had violated FOIA by wrongfully withholding non-exempt documents.  (*Id.*)  Thirty days following service, the FEC filed its Answer.  (Docket No. 12.)  Subsequently, pursuant to this Court's orders, the FEC filed status reports on May 3 and June 2, 2022.  (Docket Nos. 14 & 17; *see* Minute Order, May 4, 2022 (denying motion to strike first status report).)  These reports advised the Court of steps the FEC had taken, including an additional limited release providing portions of the December 2021 certification deemed segregable, and they provided the Court with an agreed proposed summary judgment briefing schedule, with briefing to commence on June 24, 2022.  (Docket No. 17)  The Court adopted that schedule in a Minute Order dated June 6, 2022.

**ARGUMENT**

## I.    STANDARD OF REVIEW

This Court should grant summary judgment if "there is no genuine dispute as to any material fact and [the moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Competitive Enter. Inst. v. U.S. Dep't of State*, 486 F. Supp. 3d 171, 178 (D.D.C. 2020) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)). After the government concludes that a record is responsive to a FOIA request, it may withhold information if the information falls within one of FOIA's statutory exemptions, *Cause of Action Inst. v. U.S. Dep't of Just.*, 999 F.3d 696, 699 (D.C. Cir. 2021), and when it "reasonably foresees that disclosure would harm an interest protected by [the] exemption," 5 U.S.C. § 552(a)(8)(A)(i)(I). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Competitive Enter. Inst.*, 486 F. Supp. 3d at 178 (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

## II.   THIS COURT SHOULD GRANT SUMMARY JUDGMENT TO THE FEC BECAUSE THE MATERIAL PLAINTIFF SEEKS WAS PERMISSIBLY WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE

### A.    FOIA Exemption 5 and the Deliberative Process Privilege

FOIA Exemption 5 allows the FEC to withhold from disclosure records based on privilege protections ordinarily invoked in civil discovery, including the deliberative process privilege. *Competitive Enter. Inst.*, 486 F. Supp. 3d at 178. The deliberative process privilege shields from disclosure recommendations and deliberations that comprise part of a process by which governmental decisions and policies are formulated. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). The privilege serves to promote free communications

within an agency, to provide decisionmakers with uninhibited recommendations, and to "protect against premature disclosure of proposed policies before they have been finally formulated or adopted" by the agency. *Jud. Watch v. Dep't of Justice*, 20 F.4th 49, 54 (D.C. Cir. 2021) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).  The privilege "protect[s] against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Jud. Watch*, 20 F.4th at 54.  As the Supreme Court has explained, the "deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (internal citations and quotations omitted).  To be protected by the deliberative process privilege, a record must be both "predecisional" and "deliberative." *Khatchadourian v. Defense Intel. Agency*, No. 16-311 (RCL), 2022 WL 971206, at *10–11 (D.D.C. Mar. 31, 2022).  To justify withholding in response to a FOIA request, it is also required that an agency "reasonably foresees that disclosure would harm an interest protected by [the] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I).  As explained below, the portions of the three records at issue here were lawfully withheld under these standards.

### B.    The Withheld Material Does Not Reflect a Final Decision of the Agency

A record is predecisional if it was "generated before the adoption of an agency policy[.]" *Khatchadourian*, 2022 WL 971206, at *10 (brackets in original).  In this regard, a "record generated after one decision can be the basis of another, future decision." *Id.*  "Whether a record

is predecisional depends on a record's context relative to particular agency decisions or series of decisions." *Id.* (citing *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 61 (D.D.C. 2014)). "A document is not final solely because nothing else follows it. . . . What matters, then, is not whether a document is last in line, but whether it communicates a policy on which the agency has settled." *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786. A "document that leaves agency decisionmakers 'free to change their minds' does not reflect the agency's final decision." *Id.* (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 189-90 & n.26 (1975)).

In this case, the FEC is permitted to treat the vote-certification portions and statement of reasons at issue as predecisional because the file in the administrative enforcement matter of which they are a part, MUR 7486, has not been closed, and the matter remains subject to further Commission actions. The agency's customary termination of proceedings on the matter has not occurred.

Plaintiff 45Committee claims (Compl. ¶¶ 2, 22, 23 (Docket No. 1)) that the certifications it seeks show that the FEC has "terminat[ed] the administrative complaint" and that they reflect "final decisions," but that is incorrect. First, the nature of these votes is not public, so plaintiff is making an unsupported assumption about what motions were made. Indeed, when matters are open before the Commission, other votes sometimes take place in advance of votes on whether there is a reason to believe a violation occurred or to dismiss. Other closed matters provide examples of such votes. *See, e.g.,* FEC MUR 6798 (David Vitter for U.S. Senate).[2] In any case,

---

[2]     Certification, FEC MUR 6798 (David Vitter for U.S. Senate, *et al.*) (Dec. 5, 2017) (4-1 vote to send letter to respondents), https://www.fec.gov/files/legal/murs/6798/19044463470.pdf; Certification, FEC MUR 6798 (March 26, 2019) (2-2 vote to find reason to believe and 4-0 vote to close the file), https://www.fec.gov/files/legal/murs/6798/19044463493.pdf.

other than accepted motions that explicitly close MUR files, other votes have not historically functioned as dismissals or automatically terminated agency proceedings. In MUR 7486, the FEC has held votes, as reflected in the certifications dated June 23, 2020, and December 2, 2021. (*Vaughn* Index at 1 (Exh. 2).) But the conventional understanding has been that such votes do not automatically result in a dismissal or termination of the administrative matter. Even if it were true that further steps in MUR 7486 appear unlikely at this time, "[w]hat matters [] is not whether a document is last in line, but whether it communicates a policy on which the agency has settled." *U.S. Fish & Wildlife Service*, 141 S. Ct. at 786. These votes and the statement of reasons do not convey such a policy; on the contrary, Commissioners are "free to change their minds." *Id*. The FEC's practice for more than four decades has been to dismiss such enforcement matters only by the inclusion of a distinct vote to "close the file." Plaintiff points to no instance in that time in which FEC action on an administrative complaint has been deemed to have ended in the absence of such a vote and, in any event, any examples located would be outliers from the thousands of matters that have been closed with such votes.

The understanding that FEC administrative enforcement matters are terminated only through a vote to close the file is supported by FECA, FEC regulations, long-standing policy and practice, and relevant case law. Nothing in the FECA provision establishing the four-vote requirement for finding reason to believe a violation has occurred, the step in the administrative process that can lead to an investigation, suggests that a matter is automatically dismissed whenever a reason-to-believe vote fails. *See* 52 U.S.C. § 30109(a)(2). On the contrary, FECA specifically references a "vote to dismiss" an administrative complaint in the context of expedited action on a complaint, in section 30109(a)(1).

In addition, FEC regulations specifically describe the "vote[] to close [the] enforcement file." *See* 11 C.F.R. § 5.4(a)(4).  Moreover, 11 C.F.R. § 111.20(a) requires the Commission, when it "terminates its proceedings," to "make public such action."  In this matter, of course, that has not occurred.  The FEC has not posted documents for MUR 7486 on its website.  *See* FEC, Enforcement Query System, https://eqs.fec.gov/eqs/searcheqs (last visited June 23, 2022).  Finally, when the FEC closes a matter, 11 C.F.R. § 111.9(b) requires it to notify the "respondent by letter."  45Committee does not claim that has occurred.

Plaintiff's assertion that a failed reason-to-believe vote automatically dismisses an FEC enforcement matter is also belied by the history of the agency's enforcement process.  A private plaintiff previously catalogued that history in great detail.  *See* Pl.'s Combined Mem. of P. & A. in Opp'n to All Defs.' Motions to Dismiss, *Giffords v. Nat'l Rifle Ass'n Pol. Victory Fund*, 38-40 (Feb. 18, 2022) (Docket No. 39).  As explained there, the Commission has often held one reason-to-believe or probable-cause-to-believe vote that does not pass, only to determine in a later vote that there was in fact reason to believe or probable cause to believe on the same claim.  *See, e.g.*, FEC MURs 7350, 7351, 7357, and 7382 (Cambridge Analytica LLC, *et al.*);[3] MUR 6623

---

[3]    Certification, MURs 7350, 7351, 7357 & 7382 (Cambridge Analytica LLC, *et al.*) (Apr. 12, 2019) (failing, 2-0, to find reason to believe on a series of claims), https://www.fec.gov/files/legal/murs/7350/7350_27.pdf.  *See* Certification, MURs 7350, 7351, 7357 & 7382 (Cambridge Analytica LLC, *et al.*) (July 30, 2019) (voting 4-0 to find reason to believe on several of the same claims), https://www.fec.gov/files/legal/murs/7350/7350_29.pdf; Certification, MURs 7350, 7351, 7357 & 7382 (Cambridge Analytica LLC, *et al.*) (Aug. 22, 2019) (same), https://www.fec.gov/files/legal/murs/7350/7350_37.pdf.

(Scalise for Congress, *et al.*);[4] MUR 5754 (MoveOn PAC, *et al.*);[5] MUR 4012 (Freedom's

Heritage Forum, *et al.*).[6]  The agency also regularly votes to close its file after votes on whether

there is reason to believe do not garner a four-vote majority.  *See, e.g.*, FEC MUR 6656 (Anchin,

Block & Anchin LLP, et al.);[7] MUR 6612 (Crossroads Grassroots Policy Strategies).[8]  *See also*

*CREW v. FEC*, 236 F. Supp. 3d 378, 387-88 (D.D.C. 2017), *aff'd*, 892 F.3d 434 (D.C. Cir. 2018)

(noting that an FEC administrative enforcement matter was dismissed when the Commission

voted 5-1 to close the file on the date of a second reason-to-believe vote).

---

[4]    Certification, MUR 6623 (Scalise for Congress, *et al.*) (July 31, 2012) (voting 3-3 on whether there was reason to believe one respondent violated FECA and then later voting 5-1 to find reason to believe regarding that respondent), https://eqs.fec.gov/eqsdocsMUR/13044330654.pdf.

[5]    Certification, MUR 5754 (MoveOn PAC, *et al.*) (Sept. 14, 2004) (voting 3-2 on whether there was reason to believe), https://www.fec.gov/files/legal/murs/5754/0000590C.pdf; Certification, MUR 5754 (MoveOn PAC, *et al.*) (Sept. 28, 2004) (voting 5-1 to find reason to believe), https://www.fec.gov/files/legal/murs/5754/0000590D.pdf.

[6]    *See* Certification, MUR 4012 (Freedom's Heritage Forum, *et al.*) (Feb. 10, 1998) (voting 3-2 on whether there was probable cause to believe violations occurred), https://www.fec.gov/files/legal/murs/4012/28044203712.pdf; Certification, MUR 4012 (Freedom's Heritage Forum, et al.) (May 27, 1998) (authorizing a civil suit against same respondents), https://www.fec.gov/files/legal/murs/4012/28044203734.pdf.

[7]    Certification, MUR 6656 (Anchin, Block & Anchin LLP, et al.) (Sept. 24, 2013) https://www.fec.gov/files/legal/murs/6656/14044353561.pdf (reason-to-believe vote that did not garner four votes on Sept. 24, 2013), Certification, MUR 6656 (Anchin, Block & Anchin LLP, et al.) (Mar. 20, 2014) (vote to close the file on March 20, 2014 approved by a four-vote majority), https://www.fec.gov/files/legal/murs/6656/14044353565.pdf.

[8]    Certification, MUR 6612 (Crossroads Grassroots Policy Strategies) (Oct. 29, 2015) (reason to believe vote that did not pass with four votes), https://www.fec.gov/files/legal/murs/6612/15044385336.pdf; Certification, MUR 6612 (Crossroads Grassroots Policy Strategies) (Nov. 17, 2015) (same), https://www.fec.gov/files/legal/murs/6612/15044385338.pdf; Certification, MUR 6612 (Crossroads Grassroots Policy Strategies) (Dec. 17, 2015) (vote to close the file approved by four or more Commissioners), https://www.fec.gov/files/legal/murs/6612/15044385358.pdf.

Courts have repeatedly referenced the Commission's practice of dismissing matters through the inclusion of an explicit vote to close the file.  *See CREW v. FEC*, 971 F.3d 340, 346 (D.C. Cir. 2020); *Doe, 1 v. FEC*, 920 F.3d 866, 871 n.9 (D.C. Cir. 2019), *cert. denied*, 140 S.Ct. 2506 (2020); *CREW v. FEC*, 892 F.3d 434, 441 n.13 (D.C. Cir. 2018); *CREW v. FEC*, 236 F. Supp. 3d 378, 388 (D.D.C. 2017), *aff'd*, 892 F.3d 434 (D.C. Cir. 2018).  The D.C. Circuit has also referenced the date the FEC closes the file (rather than the date of any previous vote at the reason-to-believe stage) as "the date of the dismissal" that triggers section 30109(a)(8)(B)'s 60-day deadline for a complainant to challenge the dismissal.  *CREW*, 892 F.3d at 436; *Jordan v. FEC*, 68 F.3d 518, 519 (D.C. Cir. 1995); *Spannaus v. FEC*, 990 F.2d 643, 644 (D.C. Cir. 1993) (per curiam); *see also CREW v. FEC*, 799 F. Supp. 2d 78, 83 (D.D.C. 2011).

The FEC has a long-standing practice of not waiving privilege regarding enforcement materials until after a matter is closed, as reflected in the agency's 2016 disclosure policy.  A broad range of categories of materials including certifications are made public under that policy but only "upon termination of an enforcement matter."  FEC, Disclosure of Certain Documents in Enforcement and Other Matters, 81 Fed. Reg. at 50703.  The certifications remain privileged until the matter closes, or until the Commission affirmatively waives applicable privileges.  Neither has occurred here.  It was within the agency's discretion to treat the vote certifications and the statement of reasons as predecisional.

## C.    The Material Withheld Reflects the Give-And-Take of the Agency's Deliberative Process

A record is deliberative if it reflects "the give-and-take of the consultative process."  *Coastal States*, 617 F.2d at 866; *Khatchadourian*, 2022 WL 971206, at *10.  This standard encompasses "recommendations" and other documents that would "inaccurately reflect or prematurely disclose" the agency's views.  *Id.*  To show that a record meets this requirement, an

agency accordingly must establish: (1) the deliberative process was involved; (2) the role the document played in the course of the deliberative process; and (3) the nature of the decision-making authority vested in the office or person issuing the records, along with where the parties to the documents sit in the chain of command.  *Id.* at 11.  The application of the privilege depends upon the role the document plays in the administrative process.  *Judicial Watch, Inc.*, 20 F.4th at 55.  Documents are deliberative if they "reflect [the] agency's group thinking in the process of working out its policy and determining what its law shall be."  *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 153 (1975).

The FEC documents withheld here are deliberative because, although they do reflect voting and a Commissioner's statement of reasons regarding the MUR, they also reflect the ongoing "give-and-take" and "group thinking" of the FEC's consultative enforcement process.  *Sears, Roebuck & Co.,* 421 U.S. at 150, 153; *Coastal States*, 617 F.2d at 866; *Khatchadourian*, 2022 WL 971206, at *10.  Before a MUR file is closed, Commissioners can develop and even alter their views with regard to the allegations before them, potentially leading to different final decisions.  As explained above, this has happened on many occasions in the past.  *See supra* p. _.  The votes and the statement at issue here reflect that deliberation, and in particular the positions of different Commissioners, the ultimate decision-makers, as to aspects of the enforcement matter at issue during the agency's consideration of the matter.  *See Khatchadourian*, 2022 WL 971206, at *11.  It is true that the descriptions of the votes in the certifications are not lengthy, but material need not engage in detailed analysis in order to be considered deliberative in nature, as long as it "reflect[s the] agency's group thinking in the process of working out its policy and determining what its law shall be."  *Sears, Roebuck & Co.,* 421 U.S. at 153.  That process can encompass FEC staff recommendations, discussion among

Commissioners, initial votes, further instructions to staff that may lead to the development of new argument or evidence, additional discussion and deliberations, Commissioner statements of reasons, and later rounds of votes. During this process, Commissioners remain free to reconsider previous determinations and to "change their minds." *U.S. Fish & Wildlife Service*, 141 S. Ct. at 786. As noted above, the Commission frequently holds interim votes on enforcement matters as to which it later makes different determinations. *See* supra pp. 9-10.

Accordingly, the standards for invocation of the deliberative process privilege that this Court set forth in *Khatchadourian*, 2022 WL 971206, at *10, are satisfied here. There has been no culmination of decisionmaking through a vote to close the file as to the FEC enforcement matter to which the documents at issue relate. And the documents, which relate to votes on that matter in advance of file closure, reflect the agency's continuing deliberative process, one that can and often does include subsequent proceedings with additional votes and different results. In this situation, withholding the documents at issue was allowable.

> **D.    It Was Permissible to Find It Reasonably Foreseeable That Release of the Withheld Records Would Harm the Agency's Deliberative Process**

A 2016 amendment to FOIA provides that "[a]n agency shall withhold information … only if … the agency reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A). "FOIA now requires that an agency release a record — even if it falls within a FOIA exemption — if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Ctr. for Investigative Reporting v. U.S. Customs and Border Prot.*, 436 F. Supp. 3d 90, 105-06 (D.D.C. 2019) (internal quotation marks omitted). The "agency must identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials and connect the harms in a meaningful way to the information

withheld." *Id.* at 106 (quoting *Jud. Watch, Inc. v. U.S. Dep't of Justice*, No. 17-832, 2019 WL 4644029, at *3 (D.D.C. Sept. 24, 2019) (internal quotation marks and brackets omitted)).

It was permissible to foresee harm from disclosure of the material at issue here because revealing agency deliberations piece by piece before an FEC enforcement matter closes would inhibit Commissioners' ability to develop their views and "change their minds," *U.S. Fish & Wildlife Service*, 141 S. Ct. at 786, while sowing public confusion.  In particular, premature disclosure of votes and statements would threaten the agency's deliberative process by revealing to administrative respondents, the media, and the public at large the internal deliberations of decision-makers, including the positions and reasoning of specific Commissioners, all while the give-and-take of the decision-making process was still underway.  In the context of the FEC's specific enforcement decision-making process, disclosure of such records before the file was closed would run contrary to the purpose of the privilege to "protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Judicial Watch*, 20 F.4th at 54.  Indeed, such premature disclosure would be similar in many respects to disclosure of unapproved agency drafts and likewise result in public confusion.  *See Jud. Watch, Inc. v. Dep't of Com.*, No. 17-1283, 2020 WL 6939807, at *6 (D.D.C. Nov. 25, 2020) (relying on agency's specific explanation for withholding a category of draft statements which if released "would cause significant public confusion"); *CREW v. GSA*, No. 18-2071, 2021 WL 1177797, at *10 (D.D.C. Mar. 29, 2021) (finding agency had "sufficiently articulated a 'foreseeable harm' that would arise from disclosure of [a] draft [that] may 'confuse the public' about the agency's responses to the questions presented.").  Such interim disclosure of agency enforcement activity would also imperil any potential FEC investigation, while inhibiting the ability of the agency to

16

reach a well-reasoned final decision, or perhaps a creative new approach, limiting or foreclosing avenues for resolution of the matter. *See Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (finding that an agency had permissibly withheld records under the deliberative process privilege because "disclosure of that information 'would' chill future internal discussions").

The position 45Committee urges here — that Commissioner votes and statements occurring prior to closure of the MUR file actually constitute "final decisions" (Compl. ¶ 23) and therefore they must be released to the public in response to FOIA requests — would undermine the agency's deliberative process. For one thing, it could result in dismissals of enforcement matters when that was not the will of a majority of Commissioners, and even when a motion to dismiss a matter had not passed with the vote of four Commissioners. Indeed, three Commissioners could effectively dismiss a matter at any time, even if three other Commissioners disagreed, which would be contrary to the FEC policy and practice described above. *See* supra pp. 1-4. But more to the point, if FEC enforcement matters automatically terminated when a Commission vote to "proceed with an investigation" did not reach the four-vote threshold, as plaintiff asserts occurred here (*id*. ¶ 2), it could end the ability of Commissioners to further consider matters and achieve consensus on whether to proceed or dismiss.

Plaintiff has indicated that it seeks the records at issue for use in other legal proceedings — a purpose that courts have made clear is not what Congress intended FOIA to serve. As noted above, 45Committee seeks to use the records to defend a private enforcement action, seeking to stay that case based in part on the claim that this FOIA lawsuit seeks "the unredacted voting records and any statement of reasons confirming that the Commission has acted on — and dismissed — CLC's administrative complaint against 45Committee, thereby precluding CLC

17

from filing this direct lawsuit against 45Committee."  Mot. of Def. 45Committee, Inc. to Stay

Proceedings, *CLC v. 45Committee, Inc.*, Civ. No. 22-1115 (D.D.C. June 17, 2022) (Docket No.

17).  As explained above, there has been no successful vote to close the file in MUR 7486, the

customary means by which the agency terminates administrative enforcement matters.  But in

any event, FOIA was not designed to serve such litigation efforts.  *See Changzhou Laosan*

*Group v. U.S. Customs & Border Prot. Bureau*, No. 04-1919, 2005 WL 913268, at *7 (D.D.C.

Apr. 20, 2005) ("the purpose of FOIA is not to serve as a tool for obtaining discovery" for other

proceedings.); *Sears, Roebuck & Co.,* 421 U.S. at 143 n.10 ("The Act is fundamentally designed

to inform the public about agency action and not to benefit private litigants").

## CONCLUSION

The FEC permissibly withheld the records at issue pursuant to FOIA Exemption 5.

Therefore, the Court should grant the FEC's motion for summary judgment.

Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)          /s/ Greg J. Mueller
Acting General Counsel                            Greg J. Mueller (D.C. Bar. No. 462840)
lstevenson@fec.gov                                Attorney
                                                  gmueller@fec.gov
Kevin Deeley
Associate General Counsel                         COUNSEL FOR DEFENDANT
kdeeley@fec.gov                                   FEDERAL ELECTION COMMISSION
                                                  1050 First Street, NE
Harry J. Summers                                  Washington, DC 20463
Assistant General Counsel                         (202) 694-1650
hsummers@fec.gov
                                                  June 24, 2022

18